**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**


RANDELL E. WISHAM                                                    PLAINTIFF

V.                                    3:11CV00119 JTR

GERALD MCCLUNG,
Sheriff of Clay County, et al.                                      DEFENDANTS


## ORDER OF DISMISSAL[1]


Plaintiff, Randell E. Wisham, has filed this *pro se* § 1983 action alleging that

Defendants failed to provide him with adequate medical care while he was a convicted

prisoner in the Clay County Detention Center ("CCDC").  *See* docket entries #2, #8,

and #16.

Defendants have filed a Motion for Summary Judgment, a Brief in Response,

and a Statement of Undisputed Facts.  *See* docket entries #58, #59, and #60.  Plaintiff

has filed a one page Response.  *See* docket entry #62.  Although he was directed to do

so, Plaintiff has *not* filed a Statement of Disputed Facts or any documents to support

---

[1] On October 25, 2011, the parties consented to proceed before a United States
Magistrate Judge.  *See* docket entry #34.

his allegations.[2] Thus, the following facts, as set forth in Defendants' summary judgment papers, are deemed *admitted* by Plaintiff pursuant to Local Rule 56.1(c).

1.      On April 4, 2011, Plaintiff was booked into the CCDC as a convicted prisoner. *See* docket entry #59, Ex. 1.

2.       During his intake screening, Plaintiff indicated that he had high blood pressure, diabetes, a seizure disorder, and mental illness. *Id.*

3.      Throughout his incarceration at the CCDC, Plaintiff regularly received: (a) omeprazole for reflux; (b) cyclobenzaprine and hydrocodone for pain; (c) amitriptyline, paroxetine, and quetiapine for depression and other unspecified mental problems; (d) simvastatin for high cholesterol; (e) aspirin and lisinopril for hypertension; (f) clonazepam for seizures; (g) diclofenac for arthritis; and (h) insulin for diabetes. *Id.*

4.      While at the CCDC, Plaintiff's blood sugar levels and blood pressure were regularly monitored. *Id.*

5.      On May 15, 2011, Plaintiff  submitted a medical request form seeking

---

[2] On June 26, 2012, the Court ordered Plaintiff to file, within thirty days, a Response to Defendants' Motion for Summary Judgment, a *"separate"* Statement of Disputed Facts, and any documents he had to support his allegations. *See* docket entry #61 (emphasis added).  Importantly, the Court advised Plaintiff that if he failed to do so, the facts in Defendants' summary judgment papers would be deemed admitted by Plaintiff pursuant to Local Rule 56.1(c). *Id.*

treatment for an infection on his left leg.  A nurse treated the infection with a triple antibiotic cream and scheduled a doctor's appointment.  *Id.*

6.     On May 16, 2011, Plaintiff was examined by a doctor at a private medical clinic.  *Id.*  The doctor (who is *not* a Defendant in this action) prescribed an oral antibiotic to treat that infection.  *Id., Exs.* 1 and 4.

7.     On May 23, 2011, a jailer reported to the doctor, by telephone, that Plaintiff's infection appeared the same and was still draining fluid.  *Id.*  The doctor instructed the jailer to continue Plaintiff's oral antibiotic.  *Id.*

8.     On June 26, 2011, Plaintiff filed a medical request form stating that his infection was not healing.  *Id.*, Ex. 1.  However, he refused to be seen by the private doctor.  *Id.*  Instead, he requested to be taken to a local emergency room for treatment.

9.     On July 7, 2011, Defendants temporarily released Plaintiff from the CCDC so that his wife could take him to the Piggot Community Hospital for treatment.  *Id.*, Exs. 1 and 2.  While at the hospital, a doctor (who is not a Defendant in this action) noted that Plaintiff had staph infection sores on his leg, buttocks, and face.  *Id.*  Plaintiff received an oral antibiotic, and he returned to the CCDC later that day.  *Id.*

10.    On July 13, 2011, Defendants temporarily released Plaintiff from the CCDC so that his wife could take him to the Veterans Administration ("VA") Hospital

in Poplar Bluff, Missouri for monitoring and treatment for his various medical problems. *Id.* at Ex. 3. The VA doctors (who are not Defendants in this lawsuit) noted that Plaintiff's blood pressure, diabetes, mental health issues, and arthritis were well controlled. *Id.* Importantly, there is no mention of Plaintiff having a staph infection or being on antibiotics at that time. The VA doctors continued Plaintiff's other medications, and he returned to the CCDC later that day. *Id.*

11.     On July 28, 2011, Plaintiff was released from the CCDC, and he is currently residing at a private address in Arkansas.

## II. Discussion

Defendants argue that they are entitled to summary judgment on the inadequate medical care claims Plaintiff has raised against them in both their individual and official capacities.[3] The Court will address each argument separately.

## A.     Individual Capacity Claim

---

[3]     Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

To prevail on the inadequate medical care claim brought against Defendants in their individual capacities, Plaintiff must prove that:  (1) he had an objectively serious medical need; and (2) Defendants subjectively knew of, but deliberately disregarded, that serious  medical need.  *See Estelle v. Gamble,* 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Defendants do not dispute that Plaintiff had a variety of serious medical needs. Thus, the issue is whether they "knew of but deliberately disregarded" his need for treatment for those serious medical needs.

It is well settled that negligence and even gross negligence do not constitute deliberate indifference.  *Langford*, 614 F.3d at 640; *Gibson v. Weber*, 433 F.3d 643, 646 (8th Cir. 2006). Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).  In other words, there "must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Plaintiff alleges Defendants were deliberately indifferent in his need for treatment for a staph infection. To the contrary, the *undisputed* evidence demonstrates that, immediately upon learning that Plaintiff had an infection, CCDC medical

providers gave him a topical antibiotic cream and scheduled an appointment with a private doctor.  The next day, a private doctor prescribed oral antibiotics, and he later continued that prescription when Plaintiff's infection did not heal.  Further, when Plaintiff refused to return to the private doctor,  Defendants granted his request to seek medical care at a local hospital.  Finally, it appears that Plaintiff's infection healed by the time he went to the VA Hospital on July 13, 2011.

Thus, Defendants' were not deliberately indifferent to Plaintiff's need for medical treatment for a staph infection.  *See Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (finding that defendants were not deliberately indifferent when they treated the prisoners' medical problems on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner"); *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994) (finding no deliberate indifference when the defendants did not ignore the prisoner's allegations and provided him with "an escalating level of treatment for [his] aliments over time").

Plaintiff argues that his staph infection should have been treated with intravenous antibiotics.  However, a mere disagreement with the course of medical care does not rise to the level of a constitutional violation.  *Langford*, 614 F.3d at 640; *Gibson,* 433 F.3d at 646.  Additionally, Plaintiff has *not* named the private doctors, who decided to treat his infection with oral antibiotics, as Defendants.

Plaintiff also contends that Defendants periodically failed to timely refill his various prescriptions and that, on one instance, Defendant Rowe accidentally gave his anti-anxiety and pain medications to another prisoner. However, as previously explained, negligence and even gross negligence do not rise to the level of a constitutional violation. *Langford*, 614 F.3d at 640; *Gibson,* 433 F.3d at 646. Further, although he has been given the opportunity to do so, Plaintiff has not come forward with *any evidence* demonstrating that he was harmed by the alleged delays in refilling his prescriptions. *See Hines v. Anderson,* 547 F.3d 915, 920-21(8th Cir. 2008) (holding that temporary delays in refilling the prisoners' various prescriptions did not rise to the level of constitutional violation); *Gibson*, 433 F.3d at 646-47 (explaining that, to avoid summary judgment, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment).

Finally, Plaintiff alleges that Defendants failed to properly monitor his blood pressure and blood glucose levels. However, he has not come forward with *any* evidence to support that conclusion or demonstrate that he was harmed by the alleged failure. Additionally, the evidence produced by Defendants demonstrates that they did, in fact, regularly monitor his blood pressure and blood glucose levels.

Accordingly, the Court concludes that Defendants are entitled to summary

judgment on the inadequate medical care claims Plaintiff has raised against them in their individual capacities.

**B.      Official Capacity Claim**

Plaintiff's claim against Defendants, in their official capacities, is actually a suit against the county itself. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Jenkins v. County of Hennepin, Minn*., 557 F.3d 628, 631-32 (8th Cir. 2009). Clay County may not be held vicariously liable, in a § 1983 action, for the acts of its employees. *See Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978). Instead, Clay County may be held liable only if an official policy, custom, or practice caused Plaintiff's injuries. *See Jenkins*, 557 F.3d at 632; *Grayson v. Ross*, 454 F.3d 802, 810-11 (8th Cir. 2006). Importantly, the official policy, custom, or practice must be the "cause of " or "moving force behind" the constitutional violation. *Jenkins,* 557 F.3d at 633.

Although he has been given the opportunity to do so, Plaintiff has not identified a Clay County policy or custom that was the "cause of" his receiving constitutionally inadequate medical care.   In fact, the Court has already concluded  that Plaintiff did not receive constitutionally inadequate medical care at the CCDC.   Finally, any request that Plaintiff may have had for injunctive relief at the time he filed his lawsuit has now been rendered moot by his release from custody. *Zajrael v. Harmon*, 677

F.3d 353, 354 (8th Cir. 2012); *Obama v. Burl,* Case No. 11-2435, 2012 WL 1648889 (8th Cir.  May 11, 2012) (unpublished opinion).

Thus, Defendants are also entitled to summary judgment on the inadequate medical care claims Plaintiff raised against them in their official capacities.

### III.  Conclusion

IT IS THEREFORE ORDERED THAT:

1.     Defendants' Motion for Summary Judgment (docket entry #58) is GRANTED, and this case is DISMISSED, WITH PREJUDICE.

2.     The Court CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order of Dismissal and the accompanying Judgment would not be taken in good faith.

Dated this 11th day of December, 2012.


_____
UNITED STATES MAGISTRATE JUDGE